IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

NIKKI LYNN RICHMAN, on her own
behalf and *ex rel.* C.R., a Minor Child,

        Petitioners,

    vs.

NATIVE VILLAGE OF SELAWIK,
RALPH STOCKER, and ARLENE
BALLOT,

        Respondents.

Case No. 3:22-cv-00280-JMK

**ORDER GRANTING
MOTION TO DISMISS**

At Docket 12, Respondent Native Village of Selawik ("Selawik") moves to dismiss Petitioner Nikki Lynn Richman's Petition for Writ of Habeas Corpus for Relief from a Tribal Court Judgment (the "Petition"), and at Docket 13, Selawik moves for judicial notice of certain court orders (together, the "Motions"). Petitioner responded in opposition at Docket 16, to which Selawik replied at Docket 23. The Court took the matter under advisement after hearing oral argument on April 18, 2023. For the reasons stated below, the Motions are GRANTED.

# I.  BACKGROUND

C.R. is an Alaska Native child born in 2019 to Eric Rustad and Kristen Huntington.[1]  Shortly after C.R. was born, Mr. Rustad murdered Ms. Huntington.[2]  On or about January 15, 2020, prior to his arrest, Mr. Rustad placed C.R. in Petitioner's care "with the intention that Ms. Richman should adopt the child."[3]  Mr. Rustad executed a Power of Attorney Delegating Parental Rights ("Delegation of Parental Rights"), appointing Petitioner attorney-in-fact "with respect to the care, custody, or property" of C.R. pursuant to Alaska Stat. § 13.26.020.[4]  Also around this time, "mistakenly believ[ing] that he was a [Native Village of Venetie ("Venetie")] tribal member," Mr. Rustad applied for C.R.'s enrollment as a tribal member of Venetie.[5]  Petitioner, a non-Native, has cared for C.R. at her home in Fairbanks, Alaska, since January 2020.[6]

On February 3, 2020, Petitioner filed a petition to be appointed as C.R.'s guardian in Venetie Tribal Court (the "Venetie Court").[7]  The Venetie Court did not respond to Petitioner's petition for guardianship.[8]  At a February 25, 2020, hearing at which Petitioner was not present, the Venetie Court found C.R. to be a child in need of aid and granted Petitioner temporary physical custody over C.R.[9]  The Venetie Court also named

---

[1] Docket 1 ¶¶ 7–8, 11.
[2] *Id.* ¶ 15.
[3] *Id.* ¶ 16.
[4] *See id.* ¶ 20; Docket 4-1 (updated copy of Delegation of Powers by Parent signed December 19, 2022).
[5] Docket 1 ¶¶ 21–22.
[6] *Id.* ¶ 18.  Petitioner is a "person of Navajo and Caucasian descent but is not an enrolled member of the Navajo Nation." *Id.* ¶ 17.
[7] *Id.* ¶ 25.
[8] *Id.* ¶ 26.
[9] *Id.* ¶ 28.

*Richman, et al. v. Native Village of Selawik, et al.*          Case No. 3:22-cv-00280-JMK
Order Granting Motion to Dismiss                                        Page 2

Case 3:22-cv-00280-JMK   Document 37   Filed 06/01/23   Page 2 of 21

Petitioner as C.R.'s foster parent.[10]  On June 11, 2020, the Venetie Court issued an order declaring C.R. to be a ward of the tribal court and continuing C.R.'s foster care placement with Petitioner.[11]

The following year, in May 2021, the Selawik Tribal Council passed a resolution seeking to transfer C.R.'s custody case from Venetie Court to the Selawik Tribal Court (the "Selawik Court").[12]  C.R.'s mother, Ms. Huntington, was enrolled as a Selawik tribal member at the time of her murder.[13]  C.R. was enrolled as a Selawik tribal member on January 16, 2020.[14]  On July 14, 2021, the Venetie Court referred jurisdiction over C.R.'s case to the Selawik Court.[15]  Some weeks later, the Selawik Court held a status hearing in C.R.'s case and granted Petitioner temporary custody of C.R.[16]

Before the case was transferred to Selawik, Petitioner filed for C.R.'s adoption in Alaska Superior Court (the "Superior Court").[17]  Initially, Petitioner identified C.R. as an Indian child pursuant to the Indian Child Welfare Act, 25 U.S.C. § 1901 *et seq.*

---

[10] *Id.* ¶ 29.  Petitioner notes that she "never agreed" to serve as C.R.'s foster parent, instead alleging that she was her "custodian" pursuant to Mr. Rustad's Delegation of Parental Rights.

[11] *Id.* ¶ 30.

[12] *Id.* ¶ 32.

[13] *See* Docket 23-2 at 14 (Mr. Rustad identifying Ms. Huntington as an enrolled member of Selawik as of January 24, 2020); *but see* Docket 1 ¶ 13 (alleging that Ms. Huntington "automatically" lost her tribal membership pursuant to the Selawik Constitution when she left the village with no intention to return).

[14] Docket 23-2 at 13 (C.R. tribal membership card).

[15] *See* Docket 1 ¶¶ 35–37; Docket 16-1 (Venetie Court order dismissing case and referring jurisdiction to Selawik Court).

[16] Docket 1 ¶ 42.

[17] *Id.* ¶ 34.

*Richman, et al. v. Native Village of Selawik, et al.*          Case No. 3:22-cv-00280-JMK
Order Granting Motion to Dismiss                                                    Page 3

Case 3:22-cv-00280-JMK   Document 37   Filed 06/01/23   Page 3 of 21

("ICWA").[18]  She later amended the petition to allege, as she does in the present action, that neither C.R. nor her parents are tribal members.[19]  The Superior Court dismissed her petition on May 25, 2022, holding that Selawik had exclusive jurisdiction over C.R.'s child custody case.[20]

Petitioner then moved to dismiss the proceedings in Selawik Court, arguing that (1) C.R. is not an Indian Child; (2) the Selawik Court lacked jurisdiction over C.R.; (3) the Selawik Court was illegitimate under the Selawik Constitution; (4) Selawik lacks "a body of law which might regulate [the] proceeding in a matter consistent with the Indian Civil Rights Act [25 U.S.C. § 1031 *et seq.* ("ICRA")]"; and (5) the Selawik Court failed to comply with certain due process requirements under the Selawik Constitution and ICRA.[21] The Selawik Court did not act on Petitioner's motion.

Petitioner then requested that the Selawik Court allow her to adopt or otherwise continue to have custody over C.R.[22]  In connection with this request, Petitioner worked with the tribe and provided a home study to the Tribal Administrator.[23] Meanwhile, C.R.'s maternal grandmother, Respondent Arlene Ballot, also requested custody of the child.[24]  On December 16, 2022, the Selawik Court held a hearing to

---

[18] *See id.* ¶ 43.  An Indian child is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4).
[19] Docket 1 ¶ 43.
[20] *Id.* ¶ 44; *see also* Docket 12-3 (Order Recognizing Tribal Jurisdiction and Closing Case (May 25, 2022), *In the Matter of C.R.*, Case No. 4FA-21-00332-PR).
[21] Docket 1 ¶ 45.
[22] *Id.* ¶ 47.
[23] *Id.* ¶ 49.
[24] *Id.* ¶ 48.

*Richman, et al. v. Native Village of Selawik, et al.*                    Case No. 3:22-cv-00280-JMK
Order Granting Motion to Dismiss                                          Page 4

Case 3:22-cv-00280-JMK   Document 37   Filed 06/01/23   Page 4 of 21

determine C.R.'s custody placement.[25]  Petitioner gave testimony in support of her request for continued custody of C.R., as did Mr. Rustad and C.R.'s paternal grandparents.[26] Petitioner alleges that the fairness of the hearing was compromised by certain procedural due process violations, including bias, lack of adequate notice, and an inability to "call and question witnesses."[27]  At the conclusion of the hearing, the Selawik Court ordered that C.R.'s custody placement be transferred from Petitioner to Ms. Ballot (the "Custody Order").[28]  Mr. Rustad asked how he could appeal the Custody Order, and the Selawik Court Judge replied that "the decision was final."[29]

On December 20, 2022, Selawik moved to register the Custody Order with the Superior Court and obtain a writ of assistance to effectuate the transfer of C.R.'s custody to Ms. Ballot.[30]  One day later, Petitioner filed the Petition for Writ of Habeas Corpus before this Court, alleging that Selawik illegally detained C.R. and requesting an order "invalidating the [C]ustody [O]rder respecting the subject child and that the child be released from detention under such orders."[31]  On February 10, 2023, the Superior Court declined to enforce the Custody Order, holding that Selawik failed to afford Petitioner a full opportunity to be heard and that the Selawik Court was not impartial in issuing the

---

[25] *Id*. ¶ 52.
[26] *Id*. ¶¶ 54–56.
[27] *Id*. ¶¶ 53, 57, 59–60.
[28] *Id*. ¶¶ 61–63; *see also* Docket 12-4 (Order Concerning Child Custody (Dec. 16, 2022), *In the Matter of C.R.*, Tribal Court Case No. NVS-J-21-001).
[29] Docket 1 ¶¶ 66–67.
[30] *See* Docket 16 at 5; Docket 16-3 at 7.
[31] Docket 1 ¶ 73.  Petitioner moved for a preliminary injunction to stay the Tribal Court's judgment, which was held in abeyance pending resolution of the present motion.  *See* Docket 3; Docket 14 (text order).

*Richman, et al. v. Native Village of Selawik, et al.*                    Case No. 3:22-cv-00280-JMK
Order Granting Motion to Dismiss                                                        Page 5

Case 3:22-cv-00280-JMK    Document 37    Filed 06/01/23    Page 5 of 21

Custody Order.[32]   To date, C.R. continues to reside with Petitioner at her home in Fairbanks.

## II.   LEGAL STANDARDS

### A.   Federal Rule of Civil Procedure 12(b)(1)

Federal courts are "presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears."[33]   Defendants may challenge subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) with a facial attack, a factual attack, or both.  Under a facial attack, the defendant accepts plaintiff's allegations as true but asserts that they are legally insufficient to invoke jurisdiction.  By contrast, a factual attack challenges the truth of the allegations that would otherwise confer jurisdiction. Under a factual attack, the court no longer presumes Plaintiff's allegations to be true.[34] Instead, it is the plaintiff's burden to prove, by a preponderance of the evidence, that each requirement for subject matter jurisdiction has been met.[35]  "The plaintiff must support its jurisdictional allegations with 'competent proof' under the same evidentiary standard that governs in the summary judgment context."[36]

---

[32]   *See generally* Docket 16-3 (Order Denying Motion to Enforce Tribal Order (Feb. 10, 2023), *In the Matter of C.R.*, Case No. 4FA-21-00332-PR).

[33]   *A–Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003).

[34]   *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

[35]   *See id.*; *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.").

[36]   *Leite*, 749 F.3d at 1121 (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010)).

*Richman, et al. v. Native Village of Selawik, et al.*                    Case No. 3:22-cv-00280-JMK
Order Granting Motion to Dismiss                                                            Page 6

Case 3:22-cv-00280-JMK   Document 37   Filed 06/01/23   Page 6 of 21

"[W]here issues of jurisdiction and substance are intertwined," the court assumes the truth of the allegations in a complaint "unless controverted by undisputed facts in the record."[37]   In this situation, the court applies the standard under Rule 12(b)(6): dismissal is appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [their] claim which would entitle [them] to relief."[38]   As with a 12(b)(6) motion, the Court need not accept unwarranted inferences or legal conclusions cast as factual allegations.  "If a district court cannot determine jurisdiction on the basis of a threshold injury analogous to a 12(b)(6) motion, the court may assume jurisdiction and go on to determine the relevant jurisdictional facts," either at trial or on summary judgment.[39]

## B.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal where a plaintiff's complaint fails to state a cognizable claim.  To survive dismissal under Rule 12(b)(6), a complaint must contain enough facts that, if taken as true, would state a legal claim to relief that is "plausible on its face."[40]   The court construes all facts alleged in the complaint in the light most favorable to the plaintiff.[41]   Conclusory statements, unwarranted inferences, and naked assertions of law will not defeat dismissal; a plaintiff's claim "must be supported by factual allegations" to survive.[42]  Dismissal for failure to state

---

[37]  *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).
[38]  *Id.*
[39]  *Id.* at 1178.
[40]  *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).
[41]  *Id.* (quoting *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012)).
[42]  *Ashcroft*, 556 U.S. at 679.

*Richman, et al. v. Native Village of Selawik, et al.*                    Case No. 3:22-cv-00280-JMK
Order Granting Motion to Dismiss                              Page 7

Case 3:22-cv-00280-JMK   Document 37   Filed 06/01/23   Page 7 of 21

a claim is proper "if it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief."[43] A court may dismiss a case based on an affirmative defense "only if the defendant shows some obvious bar to securing relief on the face of the complaint,"[44] and the affirmative defense "raises no disputed issues of fact."[45]

## III. DISCUSSION

Selawik moves to dismiss the Petition for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim. Selawik makes both a facial and factual attack on jurisdiction, arguing that the jurisdictional allegations in the Petition are insufficient and, in some instances, demonstrably false.[46] Petitioner asserts federal habeas jurisdiction under ICRA, 25 U.S.C. § 1303, which provides that "[t]he privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of [their] detention by order of an Indian tribe."[47] She alleges that Selawik illegally detained C.R. by issuing the Custody Order.[48] Petitioner separately asserts that this Court has federal question jurisdiction under 28 U.S.C. § 1331. Petitioner argues that this suit invokes a federal question because it challenges Selawik's jurisdiction over C.R., who

---

[43] *Laborers' Int'l Union of N. Am., Loc. 341 v. Main Bldg. Maint., Inc.*, 435 F. Supp. 3d 995, 1000 (D. Alaska 2020) (quoting *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 923 (9th Cir. 2001)).
[44] *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014).
[45] *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).
[46] *See generally* Docket 12.
[47] Docket 1 ¶ 6.
[48] *See id.* ¶¶ 69–73.

*Richman, et al. v. Native Village of Selawik, et al.*
Order Granting Motion to Dismiss
Case No. 3:22-cv-00280-JMK
Page 8

Case 3:22-cv-00280-JMK    Document 37    Filed 06/01/23    Page 8 of 21

Petitioner alleges is not a tribal member.[49]  Discussed below, this Court lacks jurisdiction under either statute.

## A.    The Court Takes Judicial Notice of the Superior Court and Tribal Court Judgments

Selawik moves the Court to take judicial notice of three Superior Court orders and one Selawik Court order regarding C.R.'s child custody case.[50]  Judicial notice is appropriate for facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned."[51]  This can include matters of public record, such as court documents.[52]  Because the existence of the Superior Court and Selawik Court orders are not subject to reasonable dispute, the Court takes judicial notice of the fact of these records and their holdings.  Additionally, the Court *sua sponte* takes judicial notice of the Superior Court's February 10, 2023, Order Denying Motion to Enforce Tribal Order.[53]  Importantly, judicial notice does not extend to any findings of fact within the five orders.[54]

---

[49]  Docket 16 at 7–9, 14.

[50]  *See generally* Docket 13; Docket 12-2; Docket 12-3; Docket 12-4; Docket 12-5.

[51]  Fed. R. Evid. 201(b)(2).

[52]  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001); *United States v. Chaplin*, Case No. 3:19-cr-00121-SLG, 2021 WL 149677, at *1 (D. Alaska Jan. 15, 2021) (taking judicial notice of Alaska state court records).

[53]  Docket 16-3.

[54]  *Lee*, 250 F.3d at 690 (internal quotation and citation omitted) ("On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.").

*Richman, et al. v. Native Village of Selawik, et al.*                                      Case No. 3:22-cv-00280-JMK
Order Granting Motion to Dismiss                                                                         Page 9

Case 3:22-cv-00280-JMK   Document 37   Filed 06/01/23   Page 9 of 21

**B.** **Habeas Jurisdiction Does Not Exist Under 25 U.S.C. § 1303**

Petitioner argues that Selawik has illegally detained C.R. under 25 U.S.C. § 1303 because the Selawik Court (1) lacks jurisdiction over the child and/or her custody matter; (2) committed myriad due process violations in issuing the Custody Order; and (3) is "not authorized nor organized in compliance with its [Indian Reorganization Act, 25 U.S.C. § 461 *et seq*. ("IRA")] Constitution nor the IRA."[55]  Selawik argues that the Custody Order does not "detain" C.R. under the habeas statute.[56]

In balancing tribal sovereignty with the need to "prevent[] injustices perpetrated by tribal governments," Congress expressly limited federal enforcement of ICRA to habeas corpus relief under 25 U.S.C. § 1303.[57]  The statute further limits habeas relief to those actions testing a "detention" by a tribe, which the Ninth Circuit has held to be both distinct from and narrower than the "custody" requirement of general federal habeas statutes.[58]  Thus, when the Supreme Court held in *Lehman v. Lycoming County Children's Services Agency* that habeas jurisdiction is not available to challenge parental rights or child custody orders, federal courts extended this restriction to actions brought under 25 U.S.C. § 1303.[59]  Accordingly, under *Lehman* and its progeny, child custody

---

[55] Docket 1 ¶¶ 69–72.
[56] Docket 12 at 10–15.
[57] *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 66–67 (1978).
[58] *Tavares v. Whitehouse*, 851 F.3d 863, 876–77 (9th Cir. 2017) (finding that use of the word "detention" is a "meaningful restriction" on the scope of federal habeas jurisdiction and is to be construed narrowly in favor of the tribal sovereignty).
[59] *See, e.g., United Keetoowah Band of Cherokee Indians in Oklahoma v. Barteaux*, 527 F. Supp. 3d 1309, 1317–18 (N.D. Okla. 2020) (collecting cases); *Azure-Lone Fight v. Cain*, 317 F. Supp. 2d 1148, 1151 (D.N.D. 2004); *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 892 (2d Cir. 1996); *Weatherwax v. Fairbanks*, 619 F. Supp. 294, 296 (D. Mont. 1985).

*Richman, et al. v. Native Village of Selawik, et al.*  Case No. 3:22-cv-00280-JMK
Order Granting Motion to Dismiss  Page 10

Case 3:22-cv-00280-JMK   Document 37   Filed 06/01/23   Page 10 of 21

orders do not "detain" children; Petitioner must independently demonstrate "a severe actual or potential restraint on liberty" to invoke jurisdiction under § 1303.[60] Petitioner does not do so. Petitioner's sole detention argument is that Selawik's Custody Order amounts to a detention of C.R., and therefore the Petition fails to trigger federal habeas jurisdiction under both *Lehman* and the plain language of § 1303.

Petitioner concedes that, "under normal circumstances," habeas relief is not available to attack a tribal custody order.[61] She argues this case falls within an exception to that rule. Citing the Ninth Circuit's decision in *Cobell v. Cobell* and the Eighth Circuit's decision in *DeMent v. Oglala Sioux Tribal Court*, Petitioner asserts that habeas relief is available to review "whether a tribal child custody order exceeded the lawful limits of its jurisdiction."[62] In *Cobell*, a father brought a habeas petition under § 1303 after the Blackfeet Tribal Court assumed jurisdiction over his two children's custody dispute and issued an *ex parte* restraining order enjoining the children's removal from the Blackfeet Reservation.[63] In doing so, the tribe refused to honor an existing state custody order that granted the father physical and legal custody of both children.[64] The Ninth Circuit, writing before the Supreme Court's holding in *Lehman*, found that habeas relief was available to challenge the tribal custody decree because the tribe lacked jurisdiction over the dispute and had violated the state custody order, thereby "detaining" the children.[65] Similarly, in

---

[60] *Jeffredo v. Macarro*, 599 F.3d 913, 919 (9th Cir. 2010).
[61] Docket 16 at 13.
[62] *Id*. at 9.
[63] *U.S. ex rel. Cobell v. Cobell*, 503 F.2d 790, 792 (9th Cir. 1974).
[64] *Id*.
[65] *Id*. at 795. While both the father and the mother were members of the Blackfeet Tribe, the Ninth Circuit found that the Montana State Court had primary jurisdiction over the dispute.

*Richman, et al. v. Native Village of Selawik, et al.*                    Case No. 3:22-cv-00280-JMK
Order Granting Motion to Dismiss                                          Page 11

Case 3:22-cv-00280-JMK   Document 37   Filed 06/01/23   Page 11 of 21

*DeMent v. Oglala Sioux Tribal Court*, the Eighth Circuit found concurrent habeas and federal question jurisdiction over plaintiff's challenge to a tribal custody order because the tribe refused to honor an existing state custody order.[66]  In that case, a non-Indian father brought a habeas petition under § 1303 against the Oglala Sioux Tribal Court to regain custody of his three children after the tribe (1) assumed jurisdiction over the custody matter; (2) issued a restraining order preventing the father from removing the children from the reservation; and (3) awarded custody to the mother in violation of an existing state court order.[67]  As in *Cobell*, the Eighth Circuit relied on the existence of a conflicting state custody order to find that habeas relief was available to challenge the tribe's actions.[68] Writing after *Lehman*, the court characterized the case as "a dispute over whether a tribal court violates a non-Indian's due process rights by refusing to give full faith and credit to a state custody decree," rather than an attack on a child custody order.[69]

The Eighth and Ninth Circuits have somewhat diverged in their approaches to this issue in the years since *Cobell* and *DeMent*.  For its part, the Ninth Circuit has not reaffirmed *Cobell*, instead broadly suggesting—in line with *Lehman*—that § 1303 is inappropriate to challenge to child custody orders absent some other restraint on liberty.[70] In the few post-*Cobell* cases reviewing tribal custody orders, courts in the Ninth Circuit have found jurisdiction under the general federal question statute, 28 U.S.C. § 1331, not

---

[66] *DeMent v. Oglala Sioux Tribal Ct.*, 874 F.2d 510, 513–15 (8th Cir. 1989).
[67] *Id*. at 511–12.
[68] *Id*. at 515.
[69] *Id*.
[70] *Boozer v. Wilder*, 381 F.3d 931, 934 n.2 (9th Cir. 2004).

*Richman, et al. v. Native Village of Selawik, et al.*                                    Case No. 3:22-cv-00280-JMK
Order Granting Motion to Dismiss                                                                                      Page 12
Case 3:22-cv-00280-JMK   Document 37   Filed 06/01/23   Page 12 of 21

25 U.S.C. § 1303, and only where the petition alleges that the tribe exceeded its jurisdiction over a non-member in issuing the custody order.[71]  By contrast, after *DeMent*, some district courts outside of the Ninth Circuit contemplate jurisdiction under § 1303 where the petition alleges that a tribe has exceeded its jurisdiction over a non-member or where the children are subject to competing state and tribal custody decrees.[72]

   This Court follows the Ninth Circuit's guidance to hold that the Petition does not invoke federal habeas jurisdiction.  But even if the Court was persuaded that § 1303 habeas relief is available under the narrow circumstances described in *Cobell* and *DeMent*, jurisdiction is still inappropriate here.  *Cobell* and *DeMent* each involved a state custody order that conflicted with the tribe's custody order.  Here, there is no conflicting state custody order.  In fact, the opposite is true:  the Superior Court declined to exercise jurisdiction over C.R.'s custody case, finding that Selawik had primary jurisdiction and

---

[71] *See id.*; *Atwood v. Fort Peck Tribal Court Assiniboine*, 513 F.3d 943, 946 (9th Cir. 2008); *Jones v. Lummi Tribal Ct.*, No. C12-1915JLR, 2012 WL 6149666, at \*4 (W.D. Wash. Dec. 10, 2012); *Fred v. Washoe Tribe of Nevada*, Civ. No. S-10-0845 JAM GGH PS, 2011 WL 2364953, at \*5 (E.D. Cal. June 9, 2011), *report and recommendation adopted sub nom. Fred v. Washoe Tribe of Nevada & California*, Civ. No. S-10-0845 JAM GGH PS, 2011 WL 13134277 (E.D. Cal. Aug. 12, 2011); *Martinez v. Martinez*, No. C08-5503 FDB, 2008 WL 5262793, at \*2 (W.D. Wash. Dec. 16, 2008); *see also United Keetoowah Band of Cherokee Indians in Oklahoma v. Barteaux*, 527 F. Supp. 3d 1309, 1317–21 (N.D. Okla. 2020) (analyzing *Cobell* and *DeMent* to determine that federal jurisdiction exists under § 1331 rather than under § 1303 when challenging tribal jurisdiction); *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 892 n.20 (2d Cir. 1996) (explaining that federal habeas relief is not available under § 1303 to test the validity of a tribal custody order and those cases challenging tribal jurisdiction "are perhaps better characterized as falling under 28 U.S.C. § 1331").

[72] *See, e.g., Nygaard v. Taylor*, 563 F. Supp. 3d 992, 1013–14 (D.S.D. 2021) (following *DeMent* to find jurisdiction under § 1303); *Van Nguyen v. Foley*, File No. 21-cv-991 (ECT/TNL), 2021 WL 4993412, \*7–8 (D. Minn. Oct. 27, 2021) (distinguishing *DeMent* but noting that habeas relief is available under § 1303 to challenge a tribal custody order where a tribe refuses to give full faith and credit to a state custody decree); *LaBeau v. Dakota*, 815 F. Supp. 1074, 1076 (W.D. Mich. 1993) (distinguishing *DeMent* but noting that habeas relief is available under § 1303 to challenge tribal custody order if the tribe has acted outside its jurisdiction).

*Richman, et al. v. Native Village of Selawik, et al.*        Case No. 3:22-cv-00280-JMK
Order Granting Motion to Dismiss               Page 13
Case 3:22-cv-00280-JMK  Document 37  Filed 06/01/23  Page 13 of 21

directing the parties to litigate the matter in Selawik Court.[73]  In reiterating its holding, the

Superior Court did not mince words:

> The issue [of jurisdiction] was fully resolved upon notification from Selawik
> that it intended to exercise jurisdiction over this case.  Petitioner, instead of
> remaining in the tribal courts asked this Court to reinterpret tribal laws and
> overrule the tribal court's finding that the child qualifies as a tribal member.
> As previously stated in both of the Court's previous orders, the Village of
> Selawik is a sovereign nation, entitled to both its own laws and the right to
> interpret its own laws.  Petitioner's argument, like her due process allegation,
> was not premised on any law or fact within this Court's authority. . . . Had
> Petitioner simply remained under the tribal jurisdiction, where she originally
> chose to file this issue, none of the hours of labor and umpteen filings would
> have been wasted here.[74]

Petitioner's attempts to cast the Superior Court's Order Denying Motion to Enforce Tribal

Order and her Delegation of Parental Rights under Alaska Stat. § 13.26.020 as "conflicting

state custody decrees" are unavailing.  When declining to register Selawik's Custody

Order, the Superior Court once again held that jurisdiction over C.R.'s custody matter

properly rests with the Selawik Court.[75]  And while the Delegation of Parental Rights gives

Petitioner the temporary power to act as C.R.'s attorney-in-fact, it is plainly not a state

custody decree.  It was not issued by a state court and does not grant legal or physical

custody of C.R. to Petitioner.[76]  The defining feature of *Cobell* and *DeMent*—conflicting

custody orders issued by different sovereigns—is wholly absent here.

---

[73]  Docket 12-3 at 1 (Order Recognizing Tribal Jurisdiction and Closing Case (May 25, 2022), *In the Matter of C.R.*, Case No. 4FA-21-00332-PR).

[74]  Docket 12-2 at 5 (Order Granting Motion for Attorney's Fees (November 9, 2022), *In the Matter of C.R.*, Case No. 4FA-21-00332-PR).

[75]  Docket 16-3 at 18–20 (Order Denying Motion to Enforce Tribal Order (Feb. 10, 2023), *In the Matter of C.R.*, Case No. 4FA-21-00332-PR).

[76]  *See* Alaska Stat. § 13.26.020; Docket 4-1.

*Richman, et al. v. Native Village of Selawik, et al.*                                    Case No. 3:22-cv-00280-JMK
Order Granting Motion to Dismiss                                                                           Page 14
Case 3:22-cv-00280-JMK   Document 37   Filed 06/01/23   Page 14 of 21

To the extent Petitioner argues that this Court may entertain the Petition as a challenge to Selawik's jurisdiction over non-members, under Ninth Circuit law such jurisdiction would flow from the general federal question statute, 28 U.S.C. § 1331, to which the Court turns next.

## C.    Federal Question Jurisdiction Does Not Exist Under 28 U.S.C. § 1331

Petitioner argues that C.R. is not a member of Selawik, and accordingly, that this Court may review the Selawik Court's exercise of jurisdiction as a question of federal law.[77]   Petitioner cites *National Farmers Union Insurance Co. v. Crow Tribe* for the proposition that "a [f]ederal court has jurisdiction to review the exercise of tribal court jurisdiction over non-tribal members."[78]   Indeed, the Ninth Circuit, relying on *National Farmers*, identified a "federal common law cause of action" where a non-Indian father challenged a tribal court's jurisdiction to determine his fitness to regain custody of his child.[79]   Here, Petitioner argues that C.R.'s tribal membership is void under the Selawik

_____

[77]    Docket 16 at 7–9.   While Petitioner names herself as a party and alleges various violations of her own due process rights, counsel confirmed at oral argument that her jurisdictional challenge pertains solely to C.R. and attacks Selawik's authority to preside over the custody proceedings.   *See* Docket 36 at 2 (partial transcript); *see also* Docket 1 ¶¶ 69–73 (alleging detention of child is illegal and seeking writ to invalidate custody order on behalf of child); Docket 16 at 1, 14 (outlining claims); Docket 4 at 5–8 (arguing Selawik exceeded jurisdiction because C.R. is not a tribal member); *but see* Docket 16 at 18 (arguing that Ms. Richman never voluntarily submitted to Selawik's jurisdiction).   As discussed below, the Court understands Petitioner as bringing a separate cause of action on behalf of herself for the due process violations under ICRA.

[78]    Docket 16 at 7–8 (citing 471 U.S. 845 (1985)).

[79]    *Boozer v. Wilder*, 381 F.3d 931, 934 (9th Cir. 2004); *see also Nygaard v. Taylor*, 563 F. Supp. 3d 992, 1015 n.23 (D.S.D. 2021) ("[The fathers] are non-Indian; their children however are Indian.   Under these circumstances, federal jurisdiction may exist under § 1303 and separately and independently under 28 U.S.C. § 1331."); *United Keetoowah Band of Cherokee Indians v. Barteaux*, 527 F. Supp. 3d 1309, 1320 (N.D. Okla. 2020) (finding that federal court had jurisdiction under § 1331 to determine whether the tribal court exceeded its jurisdiction in an adoption proceeding); *DeMent v. Oglala Sioux Tribal Court*, 874 F.2d 510, 512 (8th Cir. 1989) (finding

*Richman, et al. v. Native Village of Selawik, et al.*          Case No. 3:22-cv-00280-JMK
Order Granting Motion to Dismiss                              Page 15

Case 3:22-cv-00280-JMK   Document 37   Filed 06/01/23   Page 15 of 21

Constitution and, because of this, challenges Selawik's jurisdiction over her custody matter. Petitioner states that the Court must accept her "factual allegation" that C.R. is not a tribal member when evaluating subject matter jurisdiction.[80] At oral argument, Petitioner's counsel caveated that federal jurisdiction hinges on a "colorable claim" that C.R. is not a member of Selawik.[81]

This Court finds, conclusively, that C.R. is an enrolled member of Selawik. In doing so, it first revisits the standards for a factual attack on jurisdiction. Petitioner is correct that, when jurisdictional facts intertwine with the merits of a claim, the Court presumes those facts to be true.[82] However, this presumption does not extend to legal conclusions, even when they are disguised as factual assertions. Further, it does not apply if the factual allegation is "controverted by undisputed facts in the record."[83] Here, any allegation that C.R. is not a tribal member is "controverted by undisputed facts in the record," namely, that Selawik enrolled her as a member on January 16, 2020.[84] Petitioner appears to accept this fact, but she argues that Selawik issued C.R.'s membership

---

jurisdiction under § 1331 when non-Indian father brought § 1303 petition against tribe to regain custody of his children).

[80] Docket 16 at 2–3, 7.

[81] Docket 36 at 3 (partial transcript).

[82] *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

[83] *Id.*

[84] *Compare* Docket 1 ¶ 14 ("At no time during the life of C.R. was she a child of a tribal member of the [sic] either the Native Village of Venetie, nor the Native Village of Selawik, since she was born after both of her parents had lost their tribal memberships in their respective tribes.") *with id.* ¶ 22 ("On or about January 24, 2020, Mr. Rustad applied for enrollment of the child in the Native Village of Venetie"); Docket 23-2 at 13 (C.R. tribal membership card), 14 (application for tribal enrollment).

erroneously and in violation of the Selawik Constitution.[85] This is neither a factual assertion nor does it confer federal jurisdiction. Even assuming, as Petitioner alleges, that C.R.'s mother left Selawik in 2018 with no intention to return,[86] this allegation has no bearing on the undisputed fact that Selawik enrolled C.R. as a member and that she remains a member to this day.[87] Petitioner does not allege any other facts to suggest that C.R. was disenrolled or that this is a case of mistaken identity—at its core, this dispute amounts to a disagreement with the tribe's enrollment decision. Whether C.R.'s membership violates the Selawik Constitution is a question of tribal law, and one that is entirely outside this Court's jurisdiction to decide. Indeed, despite Petitioner's argument that it is this Court's "job" to review the validity of C.R.'s enrollment,[88] it decidedly is not. "[F]ederal courts lack jurisdiction to review direct appeals of tribal membership decisions because they fall within the scope of tribes' inherent sovereignty."[89] Packaging the claim as a writ for habeas corpus "cannot circumvent [federal courts'] lack of jurisdiction over these matters[.]"[90]

---

[85] *See* Docket 16 at 16–18 (arguing that Selawik "summarily rule[d] that the child was a tribal member" and that "[t]he Tribe found the child to be a member without examination of the facts").

[86] While the Court assumes this fact to be true, it notes that the only supporting evidence Petitioner provides is an affidavit from Mr. Rustad, Ms. Huntington's murderer, claiming that she told him that she had no intention of returning to the village.

[87] Further, Petitioner misrepresents the Selawik Constitution, which does not state that a tribal member "automatically" loses membership upon leaving the village. *Compare* Docket 16 at 16 *with* Selawik Const. Art. II § 3.

[88] Docket 36 at 2–3.

[89] *Tavares v. Whitehouse*, 851 F.3d 863, 876 (9th Cir. 2017); *see also Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72 n.32 (1978) (internal citation omitted) ("A tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community. Given the often vast gulf between tribal traditions and those with which federal courts are more intimately familiar, the judiciary should not rush to create causes of action that would intrude on these delicate matters.").

[90] *Jeffredo v. Macarro*, 599 F.3d 913, 920 (9th Cir. 2010).

*Richman, et al. v. Native Village of Selawik, et al.*                    Case No. 3:22-cv-00280-JMK
Order Granting Motion to Dismiss                                         Page 17

Case 3:22-cv-00280-JMK   Document 37   Filed 06/01/23   Page 17 of 21

C.R. is a member of Selawik. Petitioner's allegations, even taken as true, do not suggest otherwise.

The Court briefly addresses Petitioner's argument regarding the legitimacy of the Selawik Court. Petitioner alleges that the Selawik Court is "not authorized nor organized in compliance" with the Selawik Constitution or IRA.[91] Petitioner asserts that because the Selawik Court is not organized in accordance with its own Constitution, the Selawik Court does not "exist," and thus, the tribe is acting extrajudicially in C.R.'s case.[92] Again, this is a legal conclusion thinly disguised as a factual allegation.[93] The district court does not have jurisdiction to declare a tribal court illegal under the tribe's own constitution.[94] Petitioner's argument that a federal court might have that power simply because Congress enacted the IRA contemplates a massive intrusion on tribal sovereignty in which this Court will take no part.

In sum, while federal question jurisdiction may exist to review a tribe's jurisdiction over non-members, it does not exist to review a tribe's civil jurisdiction over its own citizens, second-guess tribal membership decisions, or intervene in tribal child custody proceedings.[95] And it certainly does not exist to supervise the creation of tribal

---

[91] Docket 1 ¶ 70.

[92] Docket 36 at 3.

[93] *See* Docket 16 at 20–22 (arguing that Selawik failed to comply with the Selawik Constitution when establishing a Tribal Court). Petitioner's own allegations and cited evidence show that the Tribal Court exists, that she participated in its proceedings, and that she appealed to it for relief until she was dissatisfied with the outcome.

[94] *See Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 71–72 (1978).

[95] *See also John v. Baker*, 982 P.2d 738, 758 (Alaska 1999) (quoting *Montana v. United States*, 450 U.S. 544, 564 (1981)) (holding that Alaska Native tribes have inherent, non-territorial sovereignty over domestic disputes between members because such custody disputes "lie[] at the

*Richman, et al. v. Native Village of Selawik, et al.*                    Case No. 3:22-cv-00280-JMK
Order Granting Motion to Dismiss                                          Page 18

Case 3:22-cv-00280-JMK    Document 37    Filed 06/01/23    Page 18 of 21

courts or declare them illegitimate under tribal law. Put more pointedly, this Court does not exist to arbitrate a sovereign nation's judiciary. There is no federal question jurisdiction over Petitioner's claims.

## D. The Tribal Court Has Exclusive Jurisdiction Over Any Remaining Claims Under ICRA

Petitioner also appears to allege, on her own behalf, that the Selawik Court violated her due process rights during the custody proceedings by providing inadequate notice of hearings, denying her the right to be heard or to appeal, and acting out of bias.[96] Because the Petition focuses exclusively on C.R.'s alleged detention, the Court is unsure as to the basis of Petitioner's due process claims—*i.e.*, if she brings such claims as C.R.'s foster parent or, alternatively, if Petitioner includes the due process allegations to support the habeas petition.[97] Regardless, assuming Petitioner's procedural due process rights were deprived by the Selawik Court under 25 U.S.C. § 1302(a)(8), this Court lacks jurisdiction to hear those claims.[98] The same is true for any substantive due process claim that "Selawik lacks a regularized body of law governing child in need of aid proceedings" or any other claims Petitioner brings under ICRA.[99] The Selawik Court has exclusive jurisdiction to hear challenges to its body of law and judicial proceedings.

---

core of sovereignty—a tribe's 'inherent power to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members.'").

[96] *See, e.g.,* Docket 1 ¶ 53, ¶¶ 57–62.
[97] *See id.* ¶¶ 69–73.
[98] *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 67–72 (1978).
[99] Docket 16 at 22.

*Richman, et al. v. Native Village of Selawik, et al.*　　　　　　　　　Case No. 3:22-cv-00280-JMK
Order Granting Motion to Dismiss　　　　　　　　　　　　　　　　　　　　Page 19

Case 3:22-cv-00280-JMK   Document 37   Filed 06/01/23   Page 19 of 21

In the face of well-established precedent, Petitioner argues that federal courts have jurisdiction to decide "whether a tribal court has exercised its jurisdiction in a manner consistent with due process and equal protection under ICRA."[100] The Supreme Court foreclosed this argument in *Santa Clara Pueblo v. Martinez*, explaining that tribes have inherent power "to make their own substantive law in internal matters and to enforce that law in their own forums."[101] While 25 U.S.C. § 1302 requires tribes to abide by some constitutional safeguards, Congress understood that tribal courts were best suited for adjudicating those claims. More fundamentally, in respecting tribal sovereignty, Congress did not sanction federal court oversight of tribes' compliance with the statute. The Supreme Court held that § 1302 does not authorize actions against the tribe or its officers in federal court, making habeas relief under § 1303 the only federal remedy for ICRA.[102] Therefore, to the extent Petitioner brings due process claims under § 1302, this Court has no authority to decide them.

## IV. CONCLUSION

Petitioner's action invites the Court to venture far outside its jurisdictional bounds. Federal court is not the proper vehicle to challenge Selawik's child custody decisions or air Petitioner's frustrations with the Selawik Court. The Motions at Docket 12 and Docket 13 are GRANTED, and the Petition is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

---

[100] *Id.* at 2.
[101] *Santa Clara Pueblo*, 436 U.S. at 55–56 (internal citations omitted).
[102] *Id.* at 67-70.

*Richman, et al. v. Native Village of Selawik, et al.*                    Case No. 3:22-cv-00280-JMK
Order Granting Motion to Dismiss                                                          Page 20
Case 3:22-cv-00280-JMK    Document 37    Filed 06/01/23    Page 20 of 21

**IT IS SO ORDERED** this 1st day of June, 2023, at Anchorage, Alaska.

/s/ Joshua M. Kindred
JOSHUA M. KINDRED
United States District Judge

*Richman, et al. v. Native Village of Selawik, et al.*                                    Case No. 3:22-cv-00280-JMK
Order Granting Motion to Dismiss                                                          Page 21

Case 3:22-cv-00280-JMK   Document 37   Filed 06/01/23   Page 21 of 21